IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHAROLETTA D. PARHAN,

       Plaintiff,                    No. 2:08-cv-02770 KJN

      v.

MICHAEL J. ASTRUE,               ORDER
Commissioner of Social Security,

       Defendant.

_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social

Security ("Commissioner") denying plaintiff's applications under Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 401 et seq. and 1381 et seq. (the "Act").[1]  In her motion for summary

judgment, plaintiff contends that the Administrative Law Judge ("ALJ") erred by:

(1) rejecting the opinions of plaintiff's treating psychiatrist and the Social Security consultative

examiner without a legitimate basis for doing so; (2) failing to properly evaluate and credit

plaintiff's third party witness statements; (3) failing to properly evaluate the severity of plaintiff's

---

[1]  This case was referred to the undersigned pursuant to Eastern District of California
Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to
proceed before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73;
Local Rule 301.  (Dkt. Nos. 7, 9.)  This case was reassigned to the undersigned by an order
entered February 9, 2010.  (Dkt. No. 24.)

1  headaches and vertigo; and (4) failing to properly assess plaintiff's residual functional capacity

2  ("RFC") and thus posing a legally inadequate hypothetical to the vocational expert.  (Dkt. No. 19

3  at 4.)  The Commissioner filed a cross-motion for summary judgment.  (Dkt. No. 23.)

4          After careful consideration of the entire record, the arguments presented, and for

5  the reasons stated below, the court denies plaintiff's motion for summary judgment and grants

6  the Commissioner's cross-motion for summary judgment.

7  I.      BACKGROUND

8          A.      Procedural Background

9          On February 17, 2005, plaintiff filed an application for social security disability

10  and supplemental security income, alleging disability beginning on March 31, 2003

11  (Administrative Transcript ("AT") 14, 192-98.)  The Social Security Administration denied

12  plaintiff's application initially and upon reconsideration.  (AT 174-79, 182-86.)  Plaintiff filed a

13  timely request for a hearing, and the ALJ conducted a hearing on April 20, 2007 (AT 14.)

14  Plaintiff, who was represented by counsel, testified at the hearing.  (AT 60-95.)  Additionally, an

15  impartial medial expert and impartial vocational expert testified at the hearing.  (AT 14.)

16          In a decision dated June 29, 2007, the ALJ denied plaintiff's application.  (AT 45-

17  59.)  Plaintiff filed an appeal with the Appeals Council for the Social Security Administration.

18  The Appeals Council, by order dated October 5, 2007, vacated the ALJ's hearing decision and

19  remanded the case.  In its remand order, the Appeals Council directed the ALJ to:  (1) give

20  further consideration to the treating source opinion and nonexamining source opinion and explain

21  the weight given to such opinions; (2) make a finding regarding the severity of the claimant's

22  alleged headaches and vertigo; (3) obtain additional evidence concerning the claimant's alleged

23  mental impairments; (4) address a certain third party statement; and (5) obtain evidence from a

24  vocational expert to clarify the effect of the assessed limitations on the claimant's occupational

25  base.  (AT 14.)

26          The hearing on remand was held on May 2, 2008.  (AT 14-29.)  Plaintiff, who was

1  represented by an attorney, testified at the hearing.  (AT 96-159.)  The ALJ issued a decision on

2  July 21, 2008, denying plaintiff benefits because she was not under a disability within the

3  meaning of the Social Security Act.[2]  (AT 11-29.)  Plaintiff filed a second appeal.  However, the

4  Appeals Council denied review, rendering the ALJ's July 21, 2008 decision the final decision of

5  the Commissioner of Social Security.  (AT 6-8.)  Plaintiff herein seeks judicial review pursuant

6  to 42 U.S.C. § 405(g).

7       B.    <u>Summary of Relevant Medical History and Evidence</u>

8       The facts of the case are set forth in detail in the transcript of proceedings and are

9

---

10      [2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, SSI is paid to disabled

11  persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both benefit structures, the term
"disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due

12  to "any medically determinable physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a continuous period of not less than

13  twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A five-step sequential evaluation
governs eligibility for benefits.  <u>See</u> 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920, 416.971-76;

14  <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).  The Ninth Circuit Court of Appeals
has summarized the sequential evaluation as follows:

15

16      Step one:  Is the claimant engaging in substantial gainful
activity?  If so, the claimant is found not disabled.  If not, proceed
to step two.

17      Step two:  Does the claimant have a "severe" impairment?
If so, proceed to step three.  If not, then a finding of not disabled is

18  appropriate.

19      Step three:  Does the claimant's impairment or combination
of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
404, Subpt. P, App.1?  If so, the claimant is automatically

20  determined disabled.  If not, proceed to step four.

    Step four:  Is the claimant capable of performing his past

21  work?  If so, the claimant is not disabled.  If not, proceed to step
five.

22      Step five:  Does the claimant have the residual functional
capacity to perform any other work?  If so, the claimant is not

23  disabled.  If not, the claimant is disabled.

24  <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25      The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  <u>Bowen</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential

26  evaluation process proceeds to step five.  <u>Id</u>.

1    briefly summarized here.

2           Plaintiff claims disability on the basis of dizziness, headaches, anxiety,

3    depression, panic attacks, nerve damage in elbows, and neck and back pain.  Plaintiff frequently

4    visited emergency rooms for treatment of her symptoms.  A November 8, 2006 emergency room

5    report summarized several of plaintiff's emergency room visits as follows:

> This is a 32-year old African-American female seen for the third time
> in three days for a different complaint each day.  She was seen on
> 11/05/2006, at that time for an altered level of consciousness.  Seen
> again on 11/07/2006 for headache and on today's date, 11/08/2006 is
> seen for abdominal pain and shortness of breath.  The patient was
> actually seen in conjunction with the resident on entering through the
> emergency department family practice resident.  Her MPI was
> evaluated and actually she has a cluster of being seen in the past on
> multiple occasions.  For instance, she was seen for three days in
> November of 2006, seen within three days of December 30, 2005.  A
> similar presentation in October, 2003.  The cluster of emergency room
> visits seems to run in 2-3's, but nevertheless she currently presents for
> a four day history of abdominal pain, headache which she was seen for
> on the day prior to presentation has resolved.  On exam she is quite
> tremulous, has difficulty swallowing and "feels as though something"
> is in her throat.

15   (AT 770.)

16          On June 20, 2005, subsequent to her application for disability benefits, plaintiff

17   underwent a consultative psychological examination administered by Dr. Janice Nakagawa,

18   Ph.D.  (AT 487-90.)  At that time, plaintiff was a 31 year old female.  She was living with her

19   two children, ages 3 and 7.  (AT 488.)  Plaintiff told Dr. Nakagawa that she had difficulty being

20   around people because of bad anxiety and vertigo.  (AT 487.)  She also complained of headaches

21   and sleep problems.  (Id.)

22          Dr. Nakagawa found plaintiff to be unreliable, tending to emphasize her

23   limitations and difficulties.  (Id.)  Dr. Nakagawa stated that plaintiff "put forth very inconsistent

24   effort on all testing.  Impression was she was attempting to present in the worst possible light for

25   ////

26   ////

4

1    secondary gain, i.e. malinger." (AT 489.)  Because malingering[3] was suspected, Dr. Nakagawa

2    administered the Rey 15-Item Memory Test, the results of which "clearly indicated malingering."

3    (Id.)  In sum, Dr. Nakagawa stated:  "She lives alone with her two young children and is able to

4    care for them.  She may have some mental health issues, but given the test data in the present

5    assessment, the only diagnosis that could be presently offered is malingering for secondary gain."

6    (AT 490.)

7           Plaintiff also underwent a comprehensive orthopedic examination on July 29,

8    2005.  (AT 491.)  Plaintiff complained of neck pain, low back pain, headaches, anxiety and

9    depression.  (Id.)  Dr. Ethelynda Jaojoco opined that plaintiff seemed to be suffering debilitating

10   headaches and vertigo.  Dr. Jaojoco also stated that plaintiff was able to stand and walk less than

11   two hours and sit for less than six hours, and that plaintiff may require an assistive device such as

12   a cane.  (AT 495.)  Dr. Jaojoco further opined that "[h]opefully the etiology of her problem will

13   be determined and proper treatment initiated.  With resolution of the vertigo and headaches she

14   will likely have no restrictions."  (Id.)  Dr. Jaojoco concluded that plaintiff was able to lift and/or

15   carry less than 10 pounds, and has postural limitations of no bending, stooping, crouching,

16   climbing, kneeling, balancing, crawling and squatting.  (Id.)

17          Records also state that plaintiff had been seen by Dr. Henry Ton, M.D., a

18   psychiatrist, for weekly visits since December 2003.  (AT 868.)  Plaintiff was prescribed a variety

19   of medications for her claimed mental health problems at different times, including Lexapro,

20   Atavan, Cymbalta, Elavil and Prozac.  (See AT 510.)  Plaintiff sometimes attended a mental

21   health group focused on panic attacks.  Plaintiff's Sacramento County Mental Health treatment

22   notes report that plaintiff "remains significantly impaired," and that although her medications

23   were somewhat helpful, her treatment records stated that she would benefit from more

24   ───────────────

25          [3] "Malingering is recurrent intentional feigning of physical and mental symptoms
     motivated by an external incentive (e.g., feigning illness to avoid work or military duty, evade
     criminal prosecution, or obtain financial compensation or drugs for abuse)."  The Merck Manual

26   of Diagnosis and Therapy 1737 (Merck Research Labs., 18th ed. 2006).

1  involvement in the panic attack group.  (AT 628.)

2          In February 2007, Dr. Ton issued a treating physician's RFC report which stated

3  that plaintiff suffers from depressed mood, hopelessness, anxiety including fears of leaving her

4  home, and obsessive compulsive hand washing and cleaning.  (AT 868.)  He diagnosed plaintiff

5  with panic disorder, obsessive compulsive disorder and major depressive disorder.  (Id.)  He

6  stated that the plaintiff was not capable of traveling alone, and that her prognosis was fair to

7  guarded.  (AT 869.)  He opined that plaintiff's daily activities were severely restricted because of

8  her condition.  (AT 870.)

9          During her May 2, 2008, social security disability hearing, plaintiff testified that

10  she had previously worked in a daycare and as a cashier at Kmart and Big Lots.  She stated that

11  she left the Big Lots job because of her anxiety and had not worked since that date.  (AT 102.)

12  Plaintiff testified that she did not vacuum, mop, clean the bathroom and rarely did laundry at

13  home.  (AT 104.)  She stated that her son's father cooked meals and went grocery shopping.  (Id.)

14  She testified that her children's godmother helped to get the kids ready for school and took them

15  to and from school.  (AT 110.)  Plaintiff testified that the children's godmother also sometimes

16  prepared their meals, cleaned the house and helped plaintiff to shower.  (Id.)  Plaintiff testified

17  that she did not leave the house to go to the movies, church, her children's school events, to play

18  sports, volunteer or exercise.  (AT 105-08.)  Plaintiff explained that there were days when she did

19  not go out at all, even when she needed to go somewhere, because "I just feel safer in the house."

20  (AT 115.)

21          Dr. Sidney Walter, medical expert, then testified.  (AT 123.)  He stated that

22  plaintiff had the symptoms of anxiety hysteria, which is linked to a somatoform[4] disorder.  He

23  testified that plaintiff also had a depressive syndrome, and that both of these diagnoses caused

24
        [4] "Somatoform disorders are characterized by physical symptoms or by perceived defects
25  in appearance.  Development of the symptoms or perceived defects is unconscious and non-
    volitional."  The Merck Manual of Diagnosis and Therapy 1736 (Merck Research Labs., 18th ed.
26  2006).

6

1   some impairment in her overall functioning.  He concluded, however, that the severity of her

2   symptoms did not meet the Social Security's listing criteria level set forth in 20 C.F.R., Pt. 404,

3   Subpt. P, App.1.  (AT 123.)  Dr. Walter concluded "[o]verall, I feel she does have symptoms, but

4   not so restrictive that she can not function . . .."  (AT 124.)

5          The ALJ next asked the VE the following hypothetical:

6          Mental limitations are based on Dr. Walter's testimony.  The
           claimant can perform simple, unskilled work.  No work
7          working in unison with others as a team.  Dr. Walter testified
           she could work in the presence of fellow employees, the
8          presence of the public, but no, no work as a team with the other
           employees.. . .  Okay, the physical limitations, no heights,
9          dangerous machinery, ladders, etcetera, due to spells of
           dizziness, those are to be my, my physical limitations, but why
10         don't you restrict yourself to light jobs, identify light jobs that
           fit, fit that RFC.

11

12  (AT 134-135.)   The VE responded that plaintiff could work as a maid or a car washer.  He also

13  testified upon further examination by the ALJ and plaintiff's attorney that she would be able to

14  perform simple assembly jobs, such as a fishing reel assembler, which was unskilled and

15  sedentary in nature, or perhaps as a surveillance system monitor.  (AT 137-55.)

16         C.     Summary of the ALJ's Findings

17         The ALJ conducted the required five-step evaluation and concluded that plaintiff

18  was not disabled within the meaning of the Act.  At step one, the ALJ concluded that plaintiff

19  met the insured status requirements of the Act through March 31, 2005.  (AT 28.)  At step two,

20  the ALJ concluded that plaintiff had the severe impairments of a major depressive disorder, a

21  panic disorder and an obsessive compulsive disorder.  (Id.)  At step three, he determined that

22  plaintiff's impairments did not meet or medically equal one of the impairments listed in the

23  applicable regulations.  (Id.)  The ALJ further determined that plaintiff had the RFC to perform

24  unskilled, entry-level work involving simple, routine tasks without frequent public contact.  In

25  consideration of the claimant's history of treatment for headaches and dizziness, and plaintiff's

26  continuing complaints of headaches and dizziness, the ALJ found that she was prevented from

7

1    working at unprotected heights or with dangerous machinery.  (Id.)  The ALJ found, at step four,

2    that plaintiff was unable to perform any past relevant work.  (AT 26.)  Finally, the ALJ found, at

3    step five and in reliance on plaintiff's RFC, that there are jobs that exist in significant numbers in

4    the national economy that the claimant could perform, considering her impairments, limitations,

5    age, education and work experience.  (AT 27.)  The Appeals Council rejected review of

6    plaintiff's case after the ALJ's decision on remand because it found no reason under its rules for

7    review.  (AT 6.)

8    II.    ISSUES PRESENTED

9            Plaintiff contends that the ALJ committed four principal errors in reviewing

10   plaintiff's claim.  (Dkt. No. 19 at 27.)  First, plaintiff argues that the ALJ erred by rejecting the

11   opinions of Dr. Ton, plaintiff's treating psychiatrist, and the opinion of Dr. Jaojoco, the Social

12   Security consultative examiner without a legitimate basis for doing so.  (Id.)  Second, she argues

13   that the ALJ failed to properly evaluate and credit plaintiff's third party witness statement.  (Id.)

14   Third, she contends that the ALJ failed to properly evaluate the severity of plaintiff's headaches

15   and vertigo.  (Id.)  Fourth, plaintiff argues that the ALJ failed to properly assess plaintiff's RFC

16   and correspondingly pose a legally adequate hypothetical to the vocational expert.  (Id.)

17   III.   STANDARDS OF REVIEW

18           The court reviews the Commissioner's decision to determine whether it is: (1) free

19   of legal error; and (2) supported by substantial evidence in the record as a whole.  Bruce v.

20   Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

21   Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v.

22   Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "Substantial evidence means

23   more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

24   reasonable mind might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc.

25   Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

26   1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health &

Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

Findings of fact that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

IV.     ANALYSIS

A.      The ALJ Provided Legally Sufficient Reasons For His Treatment of Physician Testimony

Plaintiff's initial contention is that the ALJ erred by rejecting the opinions of certain treating and examining physicians and psychologists without legally adequate reasons for doing so.  (Dkt. No. 19 at 28.)  More specifically, plaintiff contends that the ALJ failed to follow the Appeals' Council's instruction that he "give further consideration" to Dr. Ton's opinion that plaintiff's daily activities were severely impaired.  (AT 164.)

The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

Generally, a treating physician's opinion should be accorded more weight than opinions of

doctors who did not treat the claimant, and an examining physician's opinion is entitled to

greater weight than a non-examining physician's opinion. Id. Where a treating or examining

physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear

and convincing" reasons for failing to assign controlling weight to the treating physician's

ultimate conclusions. Id. If the treating or examining doctor's medical opinion is contradicted

by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting

that medical opinion, and those reasons must be supported by substantial evidence in the record.

Id. at 830-31; accord Valentine, 574 F.3d at 692. While a treating professional's opinion

generally is accorded superior weight, if it is contradicted by a supported examining

professional's opinion (supported by different independent clinical findings), the ALJ may

resolve the conflict. Andrews, 53 F.3d at 1041 (citing Magallanes v. Bowen, 881 F.2d 747, 751

(9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by

minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating

physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at

751.

An ALJ may satisfy the burden of providing those "specific and legitimate"

reasons" by "setting out a detailed and thorough summary of the facts and conflicting clinical

evidence, stating his interpretation thereof, and making findings." Orn v. Astrue, 495 F.3d 625,

632 (9th Cir. 2007) ("The ALJ must do more than offer his conclusions. He must set forth his

own interpretations and explain why they, rather than the doctors', are correct."). This the ALJ

has done in this case.

Upon remand, the ALJ concluded that plaintiff was "moderately impaired in her

ability to function from a mental standpoint," and noted that this finding was "essentially

supported by Dr. Ton's medical source statement which indicates that the claimant is moderately

1  impaired from a mental standpoint.  As such, Dr. Ton's opinion is accorded substantial weight as

2  it is supported by the objective medical evidence of record."  (AT 24.)  Dr. Ton's report that

3  plaintiff's daily activities were severely restricted is contradicted by other physician's reports,

4  and thus the Commissioner was legally bound to provide specific and legitimate reasons for

5  failing to assign controlling weight to this conclusion.

6          In reviewing the ALJ's analysis, the court finds that the ALJ provided plaintiff

7  with specific and legitimate reasons.  He set out a very detailed and thorough summary of the

8  facts and conflicting evidence.  He recognized the medical expert's disagreement with Dr. Ton's

9  opinion that plaintiff was severely impaired in her ability to function.  (AT 22.)  The ALJ also

10  recognized, inter alia, that Dr. Ton assessed plaintiff with a Global Assessment of Functioning

11  ("GAF") of 60, which is indicative of only moderate mental limitations.  (AT 24.)

12          The ALJ examined the plaintiff's medical records.  He noted that plaintiff's

13  mental health records indicated that she was being treated with medication which helped control

14  her symptoms, and that Dr. Ton noted that those medications were helpful.  (AT 24.)  The ALJ

15  referenced plaintiff's treating psychiatrist's comments that plaintiff would benefit from further

16  involvement in a panic therapy group.  (Id.)  The ALJ further noted that claimant stated at one

17  point that she cared for her two children, bathed them, got them ready for school, made breakfast,

18  read, shopped and paid bills.  (AT 24.)

19          In sum, the ALJ provided a lengthy factual summary followed by his view of the

20  evidence of record.  Moreover, the ALJ provided numerous specific and legitimate examples of

21  plaintiff's daily functioning which supported his rejection of Dr. Ton's extreme RFC assessment.

22  The court must uphold the ALJ's decision where the evidence is susceptible to more than one

23  rational interpretation.  Magallanes, 881 F.2d at 750.  The ALJ weighed the evidence in the

24  record and found that plaintiff was not disabled.  Although plaintiff contends that the ALJ took

25  an unnecessarily "rosy review" of plaintiff's mental health records, the ALJ's finding is a rational

26  interpretation of the evidence.  See Tommasetti, 533 F.3d 1041-42 ("[T]he ALJ is the final

1   arbiter with respect to resolving ambiguities in the medical evidence.") (citing Andrews, 53 F.3d

2   at 1039-40).

3            The ALJ's handling of Dr. Jaojoco's consultative examination opinion, however,

4   requires additional reflection.  Dr. E. Jaojoco, M.D., performed an orthopedic evaluation of

5   plaintiff in October 2005.  (AT 491-95.)  Plaintiff reported neck pain, low back pain, tingling in

6   both hands, headaches, anxiety and depression.  The ALJ recognized and initially addressed Dr.

7   Jaojoco's findings as follows:

8            [Dr. Jaojoco] noted that an MRI of the cervical spine dated
             February 24, 2006 showed no significant disc protrusion, stenosis,
9            or spinal cord abnormalities.  An MRI of the brain in January 2005
             had also been unremarkable.  The claimant was diagnosed [by Dr.
10           Jaojoco] with headaches and vertigo of unclear etiology; low back
             pain likely secondary to a recent lumbar puncture; vertigo, rule out
11           possible vestibular problems; an anxiety disorder; depression; and
             bilateral cubital tunnel syndrome.  The examiner opined that the
12           claimant is able to stand and walk less than two hours and sit for
             less than six hours.  She may require an assistive device such as a
13           cane in order to steady herself.  She is able to lift and/or carry less
             than ten pounds.  She has postural limitation of no bending,
14           stooping, crouching, climbing, kneeling, balancing, crawling and
             squatting.  She has no manipulative restrictions.  She has
15           environmental restrictions of no working at heights and has
             limitations with driving currently because of the headaches and
16           vertigo.  With resolution of the vertigo and headaches, she will
             likely have no restrictions.

17

18   (AT 18.)

19            Plaintiff argues that the ALJ went on to improperly reject "the uncontradicted

20   examining opinion of Dr. Jaojoco."  (Dkt. No. 19 at 31.)  This is not an accurate characterization

21   of the ALJ's ruling.  The ALJ found only that he did not "credit the *functional limitations*"

22   assessed by consultative examiner Doctor Jaojoco.

23            The ALJ made the reasoning behind this failure to credit clearly apparent in his

24   ruling:

25            [Dr. Jaojoco's] suggestions that the claimant has significant
             functional limitations can be given no evidentiary weight, as he
26           provided no explanation or basis or finding to support any

exertional limitations.  He noted no musculoskeletal findings.  He appears to be repeating the claimant's complaints, as there are no significant clinical findings in his report or other evidence in the record to support such restrictions, and the findings are also reduced by Doctor Nakagawa's findings of claimant malingering.

As noted previously, multiple studies were unremarkable.  Although there was some suggestion in the treating record that the claimant might have a demyelinating disease, neurological evaluations have show[n] no evidence of multiple sclerosis.  CT scans of the brain in September 2003 and December 15, 2004 were negative.  Further, in February 2005, Doctor Au, an examining neurologist, concluded that the claimant did not have multiple sclerosis.  Significantly, the claimant reported that Meclizine helps her feeling of lightheadedness and dizziness.  In December 2006, an MRI scan of the brain showed scattered nonenhancing white matter lesions, which were nonspecific.  An MRI of the cervical spine on February 24, 2005 revealed no significant abnormality.  An MRI scan of the brain in January 2005 was unremarkable.  A thyroid ultrasound in January 2006 showed the thyroid gland was in the upper limits of normal in size, with no focal mass lesion seen.  EEG studies in June 2005 and January 2006 were normal.  In addition, a Visual Evoked Response study on June 13, 2005, showed no evidence of a visual pathway abnormality on the left or right.  Another CT of the brain on November 7, 2006 was negative.  Further, in November 2006, an examining neurologist noted that her neurological examination did not reveal any focal abnormalities.

Therefore, as directed by the Appeals Council, the undersigned specifically finds that the claimant's complaints of dizziness and headaches do not constitute severe impairments.  They do not significantly affect her ability to work.

(AT 20-21.)

Plaintiff contends generally, though, that these articulated reasons do not meet the "clear and convincing" test for rejecting the uncontradicted opinion of a treating or examining physician.  This court disagrees.  The ALJ supported his result with clear and convincing evidence.  He stated that Dr. Jaojoco was not a treating source and that his examination was limited to a one-time examination that conflicted with treating source records.  (AT 20.)  He also recognized that although Dr. Jaojoco indicated certain functional restrictions, that those restrictions were not supported by the other evidence of record.

The ALJ recognized the plaintiff's history of treatment for headaches and

1  dizziness, and her continuing complaints regarding those ailments.  (AT 20.)  He found that she

2  would be prevented from working at heights or with dangerous machinery.  (Id.)  Under these

3  circumstances, the district court will not second-guess the well-reasoned determination of the

4  ALJ with regard to his findings on the credibility or strength of the medical testimony offered in

5  light of the depth of analysis presented by the ALJ.  See Allen v. Heckler, 749 F.2d 577, 580

6  (1984).  Therefore, no legal error is presented.

7        B.     The ALJ Appropriately Evaluated The Testimony Ms. Johnson

8        Plaintiff next contends that the ALJ failed to properly evaluate the third party

9  report of Ms. Timesha C. Johnson, Ms. Parhan's children's godmother.  Plaintiff correctly notes

10  that in determining whether a claimant is disabled, an ALJ must consider lay witness testimony

11  concerning a claimant's ability to work.  Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006).

12  The ALJ specifically considered Ms. Johnson's statement.  (AT 24-25.)  He recognized Ms.

13  Johnson's testimony that she helped plaintiff with her chores and children, but found that Ms.

14  Johnson's report tended toward the dramatic.  (AT 24.)  He stated that "[s]he repeatedly

15  described the claimant's need to 'gather her strength' to do such things as shower and perform

16  chores."  (Id.)  He weighed the various portions of Ms. Johnson's testimony, recognizing on one

17  hand that Ms. Johnson stated that plaintiff had no problems with her personal care, and on the

18  other that she would help make sure the plaintiff did not fall because standing too long caused

19  dizziness.  (Id.)  The ALJ noted that Ms. Johnson was frequently "only repeating the claimant's

20  subjective complaints because she was not in a position to 'feel' for the claimant."  Hence, the

21  ALJ accorded minimal weight to Ms. Johnson's lay witness statement because it "only

22  demonstrates that she supports/enables the claimant to the point of repeating her dramatic and

23  exaggerative subjective complaints."  (AT 25.)

24        The ALJ satisfied the Ninth Circuit's requirements for evaluating lay witness

25  testimony.  The ALJ (1) considered the testimony; (2) addressed and commented on the

26  testimony; and (3) provided specific reasons for his treatment of that testimony that are germane

1  to Ms. Johnson.  See Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006); Bruce v. Astrue,

2  557 F.3d 1113, 1115 (9th Cir. 2009.)  The ALJ properly resolved conflicts in the significant

3  evidence, and after reviewing the opinion of the consultative examiners, other doctor's reports,

4  the witness testimony at issue, and other evidence of record, determined that plaintiff was not

5  entitled to benefits.  The ALJ's findings are entitled to deference where, as here, they are

6  sufficiently specific to allow a reviewing court to conclude that the adjudicator analyzed the lay

7  witness testimony on permissible grounds and did not arbitrarily discredit Ms. Johnson's

8  testimony.  See Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991).

9              C.      The ALJ Properly Evaluated Plaintiff's Headaches And Vertigo

10                     Plaintiff next contends that the ALJ erroneously failed to include plaintiff's

11  headaches and vertigo as severe impairments at step two of the sequential evaluation process

12  pursuant to 20 C.F.R. § 404.1520(a).  (Dkt. No. 19 at 35.)  At step two of the sequential

13  evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the

14  meaning of 20 C.F.R. § 404.1520(c).  A severe impairment significantly limits a person's

15  physical or mental ability to do basic work activities.  Id.  "An impairment is not severe if it is

16  merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a

17  minimal effect on the ability to do basic work activities."  Webb v. Barnhart, 433 F.3d 683, 686

18  (9th Cir. 2005) (citing Social Security Ruling ("SSR") 96-3p (1996)).  "The step-two inquiry is a

19  de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273,

20  1290 (9th Cir. 1996).  The purpose is to identify claimants whose medical impairment is so slight

21  that it is unlikely they would be disabled even if age, education and experience were taken into

22  account.  Bowen, 482 U.S. at 153.

23                     If a severe impairment exists, all medically determinable impairments must be

24  considered in the remaining steps of the sequential analysis.  20 C.F.R. § 404.1523.  The ALJ

25  "must consider the combined effect of all of the claimant's impairments on [his] ability to

26  function, without regard to whether each alone [i]s sufficiently severe."  Smolen, 80 F.3d at

15

1  1290; 20 C.F.R. § 404.1523.

2          Here, the ALJ found that plaintiff had the severe impairments of a major

3  depressive disorder, panic disorder and obsessive compulsive disorder.  (AT 28.)  Plaintiff asserts

4  that "the ALJ seriously circumscribed [plaintiff]'s claim" by failing to include headaches and

5  vertigo as severe impairments at step two.  (Dkt. No. 19 at 35.)

6          While these conditions may indeed be serious, plaintiff's argument ignores the

7  function of step two as a gatekeeping mechanism to dispose of groundless claims.  Once a

8  plaintiff prevails at step two, by achieving a finding of some severe impairment, regardless of

9  which condition is found to be severe, the Commissioner proceeds with the sequential

10 evaluation, considering at each step *all* other alleged impairments and symptoms that may impact

11 her ability to work.  See 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual's

12 physical or mental impairment or impairments are of a sufficient medical severity that such

13 impairment or impairments could be the basis of eligibility under this section, the Commissioner

14 of Social Security shall consider the combined effect of all of the individual's impairments

15 without regard to whether any such impairment, if considered separately, would be of such

16 severity.").

17         Here, plaintiff prevailed at step two.  Thus, the question becomes whether the ALJ

18 properly considered the functional limitations of all medically determinable impairments at the

19 remaining steps.  See Smolen, 80 F.3d at 1290 (recognizing that if one severe impairment exists,

20 all medically determinable impairments must be considered in the remaining steps of the

21 sequential analysis) (citing 20 C.F.R. § 404.1523).

22         As discussed above, the ALJ fully considered all of plaintiff's impairments,

23 including her headaches and vertigo, and incorporated those limitations into the RFC.  The ALJ

24 ruled that "[c]onsidering the claimant's history of treatment for headaches and dizziness, and her

25 continuing complaints of dizziness and headaches, it is found that she is prevented from working

26 at unprotected heights or with dangerous machinery."  (AT 28.)  Accordingly, there was no error

1    in the step two analysis.

2           D.      The ALJ's RFC And Hypothetical To The VE Were Proper

3                   In a variation of the arguments raised above, plaintiff contends that because the

4    ALJ erred in "rejecting" the opinions of Drs. Ton and Jaojoco, and the statement of Ms. Johnson,

5    that he erred in assessing plaintiff's RFC.  Thus, plaintiff continues, the hypothetical question

6    premised on this RFC and presented to the vocational examiner ("VE") was improper.  (Dkt. No.

7    19 at 37-38.)  The ALJ found that as to plaintiff's RFC that she was "limited to the performance

8    of unskilled, entry-level work involving simple, routine tasks without frequent public contact.

9    Considering the claimant's history of treatment for headaches and dizziness . . . she is prevented

10   from working at unprotected heights or with dangerous machinery.  She has no exertional

11   limitations."  (AT 28.)

12                  Plaintiff contends in a summary fashion that "had the ALJ credited the opinions of

13   the treating psychiatrist, properly credited the opinion of the examining physician, properly

14   credited Ms. Johnson's statements and properly followed the instructions in the Remand Order

15   from the Appeals Council, a finding of disabled would have followed based on the testimony of

16   the vocational expert."  (Dkt. No. 19 at 38.)  Plaintiff, however, alleges no additional specific

17   error in the exchange with the VE.  The ALJ properly posed a hypothetical question to the VE by

18   including the limitations supported by the appropriate weight of evidence.  See, e.g., Robbins v.

19   Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) ("As the Commissioner correctly

20   recognizes, in hypotheticals posed to a vocational expert, the ALJ must only include those

21   limitations supported by substantial evidence.").  "It is clear that it is the responsibility of the

22   ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter,

23   260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).

24                  The ALJ asked the VE whether an individual with the limitations based on Dr.

25   Walter's testimony could perform simple unskilled work that did not involve working in unison

26   with others as a team.  The ALJ also added that the hypothetical individual would have physical

17

1  limitations that included no heights, dangerous machinery or ladders due to spells of dizziness,

2  and that the job would be identified as light work.  (AT 134-35.)  The VE responded that plaintiff

3  would not be able to perform any of her prior jobs as child attendant or sales clerk.  (AT 135.)

4  The VE found a variety of positions that did fit this hypothetical, including fishing reel assembler

5  and surveillance system monitor.  (AT 136-55.)

6           The ALJ's RFC and subsequent hypothetical to the VE adequately included all

7  supported limitations.  Conflicts in the evidence are to be resolved by the Commissioner.

8  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  The VE testified that there were a

9  substantial number of jobs for such a person given those limitations.  (AT 518.)  The ALJ

10  properly reasoned that the record supports plaintiff's ability to make a successful adjustment to

11  other work that exists in significant numbers in the national economy.  Accordingly, the

12  Commissioner's decision is free of legal error and supported by substantial evidence in the record

13  as a whole.  See Bruce, 558 F.3d at 1115.

14  V.     CONCLUSION

15           Based on the foregoing, IT IS HEREBY ORDERED that:

16           1.      Plaintiff's motion for summary judgment or remand is denied;

17           2.      The Commissioner's cross-motion for summary judgment is granted; and

18           3.      Judgment be entered in favor of the Commissioner.

19  DATED:  September 10, 2010

20

21

22

23  KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

24

25

26

18